# HOFFSCHLAEGER COMPANY, LIMITED, *vs.* YOUNG NAP *alias* YOUNG LAP.

## June 13, 1904.

*Bankruptcy.—Involuntary Proceedings.—Farming.—Farm Leased to Third Person Before Proceedings Begun:* Respondent having been engaged in farming, terminated such occupation, and permitted the farm on which he had carried on farming operations and which belonged to his wife; to be leased to a third party previous to the beginning of proceedings against him for adjudication in bankruptcy. *Held,* that he was not engaged in farming or the tillage of the soil under the provisions of the Bankrupt Act, and was liable to be adjudged a bankrupt.

*Same.—Preparations to Leave Country.—Fraudulent Intent:* Respondent being indebted to his creditors in an amount exceeding one thousand dollars, and making preparations to go out of the country with his family, had in his possession a draft for about four hundred dollars in favor of his wife, which was accounted for both by him and his wife as having been raised by a sale of certain shares in a rice plantation belonging to her, which shares were originally purchased with money raised by her mortgaging her real estate, and there being no evidence to the contrary, and the petitioner having, in another branch of the case, contested his ability to have made enough money by farming for his family expenses, and there being no satisfactory testimony of his having acquired money in any other way, *held,* that there was nothing in the case to show fraudulent intent toward his creditors in relation to this draft.

*Same.—Amount of Baggage on Leaving Country.—Fraud:* Under the same circumstances of preparing to leave the country, the accumulation in his baggage of a quantity of clothing and provisions, some few items of which were obviously presents to his family and a few of the others being evidently parcels intrusted to him to convey to friends in China, and the balance being a not unreasonable quantity of goods for a man in his position to carry for his family use, was not suspicious of an intent to carry away property in fraud of creditors.

In Bankruptcy: Application for Adjudication of Bankruptcy.

Thayer & Hemenway, Attorneys for Petitioner.

C. W. Ashford and E. M. Watson, Attorneys for Respondent.

DOLE, J.  This is a petition in involuntary bankruptcy filed March 29th, 1904, the act of bankruptcy charged being the concealment and removal of a portion of respondent's property with intent to hinder, delay and defraud his creditors.  At the same time, the petitioner applied for a writ of *ne exeat regno* against the respondent, he being about to leave the jurisdiction of the court; such writ was issued and served.  Thereafter, on the 14th day of April, the respondent filed his answer to the petition, denying any indebtedness to the petitioner and claiming that during the month of December, 1901, he and the petitioner reached a settlement of the accounts between them, since which time he has not been carrying on business as a merchant, but that his general occupation has been that of a farmer and tiller of the soil, and denying the commission of an act of bankruptcy alleged in the petition, and admitting indebtedness to divers other persons within the Territory to an aggregate amount exceeding one thousand dollars, and giving a schedule of such debts and creditors.

On the 21st of April, certain other creditors, Theo. H. Davies & Co., Ltd., and E. O. Hall & Son, Ltd., filed their petition to be allowed to join in the original petition and to become parties petitioners in the said cause, and on the same day the petitioner filed an amended petition in which was added the allegation that respondent was not principally engaged in the tillage of the soil.

On the 31st day of March, respondent filed a motion to quash the writ on several grounds set forth therein, which motion, after argument thereon, was overruled by the court on the 14th day of April.  Thereafter, on the 26th day of April, the counsel for the respondent opposed the petition of other creditors above referred to, asking that they may be made parties, moving, orally, that it appearing that there were more creditors than twelve, and as only one creditor had petitioned for adjudication, the proceedings be dismissed; which motion was overruled by the court on the same day by a written decision filed herein.

The case thereupon went to hearing upon the merits and after the petitioner rested, respondent, by his counsel, orally moved that the proceedings be dismissed upon several grounds, to-wit: that the averment of the petition that the respondent was not a wage earner had not been proved; that petitioner had not proved the allegation that the respondent was not a person chiefly engaged in farming or in the tillage of the soil; that the petitioner failed to prove a debt owing it by respondent at the date of the petition and that the petitioner failed to prove an act of bankruptcy on the part of the respondent in concealing and removing part of his property with intent to hinder, delay and defraud his creditors. The motion to dismiss was overruled on all grounds by a decision filed herein on the 26th day of May. The respondent thereupon put in his defense and the case was closed.

The two main points of the issue as developed by the evidence were, first, the question whether or not the respondent was chiefly engaged in farming or the tillage of the soil at the time the petition was filed, and whether or not the act of bankruptcy alleged has been proved.

In regard to the first point I find from the evidence, that the respondent after December, 1901, took up the business of farming as his chief occupation and continued it during 1902 and 1903. It appears, however, that previous to the date of the petition, which was March 29th, 1904, he made arrangements to go to China with his family and gave up his farming interests, and the farm, where he had carried on his farming operations, and which belonged to his wife, was leased to a third party. It is clear therefore that at the time the petition was filed he was not engaged in farming nor the tillage of the soil, having definitely terminated, for the time being, such pursuit. The case of *In re Matson,* 123 Fed. Rep., 743, is a similar case:

"The owner of a farm upon which he resides, but who has leased the same for a year for a money rental, is not engaged

in farming and may be adjudged an involuntary bankrupt under Bankrupt Act, 1898." (Syllabus).

In regard to the second point, there was a draft of eight hundred dollars on China in Mexican money worth in United States money about four hundred dollars; this was in the name of respondent's wife. The evidence of respondent, as to the origin of this fund, is to the effect that the property owned by her was mortgaged some time ago and the proceeds invested in a share in a rice plantation situate on Maui; that when they decided to go to China this share was sold realizing four hundred dollars, and this money was used to buy the draft in question. There is no testimony that the respondent had in his own right, since he was put out of business by petitioner, any large amount of money like this, but, on the contrary, counsel for petitioner has diligently contended that he could not have made enough money in farming to have supported his family, and there is no evidence of his making money in any other way, except very remotely in the evidence of Mr. Morton that he might have been in the business of buying and selling farming produce; and also in some general testimony that he must have been living by his wits. But there is no evidence that is direct and satisfactory on either of these points. The evidence as to this draft, on the part of the respondent, is not inherently improbable and there is no evidence against it and I do not feel that there are any suspicious circumstances against it, although it may be possible that there are such circumstances; but if so they were not mentioned to the court. There is no question but that the land which respondent farmed was owned by his wife. This being a fact, it is just as easy, or easier, to account for this four hundred dollars through her ownership of the land than it is by his having earned it or acquired it in any of the ways referred to in which he may have made money.

"The evidence must tend to show a fraudulent intent in the particular transaction which is impeached. However, indirect

the means may be, this is the end." *1 Wade on Attachment,* Sec. 97, page 209.

The intent to hinder, delay and defraud creditors by the concealment or removal of any part of a person's property is the act of bankruptcy complained of and Wade says, *supra,* where intent is mentioned in the statute it "is as important a matter "to be established by evidence as the fact intended." There is no evidence in this case tending to show a fraudulent intent in regard to this draft. To conclude that there is such an intent would be guessing. As to the other property which the respondent was taking out of the country when arrested, it is too trivial in value to be used as ground for an allegation of intent to defraud creditors. There were included in this property, seven hams, twenty tin boxes of crackers of perhaps five pounds each, eighteen boxes of raisins, twenty-three paste board boxes of soap and considerable clothing, a number of which articles are marked as presents to the family and as belonging to other persons. Besides these packages there are a large number of miscellaneous articles obviously in use by the household and a few jars and packages of eatables. The ticket which respondent procured for himself for this voyage was of the class known as *Asiatic passage* and it may be that the portion of the food supplies not marked for other people, was intended as supplies for the voyage. At any rate, in this limited quantity of household property there is to my mind nothing suspicious of an intent to carry away property in fraud of creditors. It would seem to be obviously the ordinary selection of articles and things which a Chinaman in the station of life of this respondent would be likely to carry away.

Subdivision 1, Section 3, of the Bankruptcy Act "requires an actual attempt to hinder, delay or defraud creditors, and such intent will be presumed when one does an act which he knows will produce that result." *In re Wilmington Hosiery Co.,* 9 Am. B. R., 589.

There is nothing in this case to show that respondent must have known that the property which he was taking away amounted to an actual attempt to hinder, delay and defraud his creditors.

In accordance with these considerations, the petition is dismissed, and judgment may be entered for respondent.